IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1906,
IN THE NINETIETH AND NINETY-FIRST
YEARS OF THE STATE.

---

### SPURGEON ET AL. *v.* RHODES.

[No. 20,728.   Filed June 19, 1906.]

1. INJUNCTION. — *Temporary.—Evidence.—Affidavits.—Informa-tion and Belief.*—It is sufficient, where a temporary injunction is prayed, for the plaintiff to file his affidavit setting forth the facts upon information and belief, supported by an affidavit of the facts by some person cognizant thereof.   p. 7.

2. SAME.—*Temporary.—Evidence.—Affidavits.—Information and Belief.—No Denial.*—A temporary injunction may be granted upon plaintiff's affidavit upon information and belief where the defendant, after notice, fails to deny the truth of the matters alleged.   p. 7.

3. SAME. — *Temporary.—Evidence.—Complaint.*—Mere allega-tions in a complaint, of apprehensions or fears, unsupported by proof will not sustain an injunction.   p. 7.

4. SAME. — *Temporary. — Evidence. — Discovery. — Information and Belief.*—Plaintiff in an application for a temporary in-junction is entitled to a discovery from defendant upon setting out the facts upon information and belief; and if defendant, after opportunity given, fails to deny same, the court may grant such injunction.   p. 8.

5. SAME.—*Temporary.—State Board of Medical Registration and Examination.—Physicians.—License.*—Plaintiff's affidavit upon information and belief that the state board of medical registra-tion and examination has conspired with the prosecuting wit-ness to have charges filed against him, and that such board will revoke his license without any trial, supported by an affidavit of certain alleged admissions by the board's attorney, does not

sustain a temporary injunction, where the members of such board by affidavits deny the allegations against them, and their attorney likewise denies such alleged admissions.   p. 9.

6.   INJUNCTION.—*Temporary.*—*Prosecuting Witness Outside of State.*—*Effect.*—The fact that the prosecuting witness is outside of the State is no ground for an injunction to prevent the State Board of Medical Registration and Examination from trying the plaintiff, a licensed physician, upon the charge of immoral conduct, in a proceeding to revoke his license.   p. 9.

7.   EVIDENCE.—*Admissions of Attorney.*—Admissions of an attorney at law are not evidence against the client.   p. 10.

8.   CONSTITUTIONAL LAW. — *Constitution of United States.* — *Whether Applicable to State Laws.*—Article 3, §2, and the fifth and sixth amendments of the United States Constitution do not apply to laws enacted by the states, but only to prosecutions in the United States courts.   p. 10.

9.   SAME.—*Physicians.*—*License.*—*Police Power.*—Prescribing the qualifications of physicians and surgeons and regulating the practice of such professions, are valid subjects of legislation under the police power.   p. 11.

10.   SAME. — *Physicians.* — *License.*—*Revocation.*—Statutes providing for the revocation of the license of a physician, for felony or gross immorality, do not violate the United States or state Constitutions.   p. 12.

11.   PHYSICIANS.—*License.*—*Revocation.*—*State Board of Medical Registration and Examination.*—*Courts.*—The grant of a license to a physician, or its revocation, by the State Board of Medical Registration and Examination, is not the exercise of judicial power.   p. 12.

From Marion Circuit Court (14,307); *W. J. Buckingham,* Judge.   (Acting under §1161 Burns 1901, Acts 1899, p. 537.)

Suit by John Milton Rhodes against W. A. Spurgeon and others.   From an interlocutory decree for plaintiff, defendants appeal.   *Reversed.*

*Charles W. Miller,* Attorney-General, and *Gavin & Davis,* for appellants.

*Daniel L. Brown, Jr.,* and *Frank P. Baker,* for appellee.

MONKS, J.——It appears from the record that in 1899 appellee was duly licensed to practice medicine in Marion

county, Indiana, and since that time has been engaged in such practice. In June, 1905, a writing making specific charges of acts of gross immorality, verified by the affidavit of Eva Boykin, was presented to the State Board of Medical Registration and Examination under §7322 Burns 1901, Acts 1901, p. 475, §1, asking that his license be revoked therefor. Said board fixed a time and place for the hearing of said charges and gave appellee notice thereof as required by §7322, *supra*. Thereupon, before the time fixed for said hearing, appellee brought this suit to enjoin appellants, the members of said board, from proceeding to hear and determine charges of "gross immorality" which were then pending against him before said board, and from revoking his license to practice medicine. A temporary injunction was granted by the judge in vacation upon notice to appellants, and from such order this appeal was taken. It is insisted by appellants that the court erred in granting said temporary injunction.

Section 7319 Burns 1901, Acts 1899, p. 247, §1, authorizes the granting of a license to practice medicine upon a certificate issued by the State Board of Medical Registration and Examination. Section 7322, *supra,* provides that any such license may be revoked by said board, if the person holding the same is "guilty of a felony, or gross immorality, or is addicted to the use of liquor or drug habit to such a degree as to render him unfit to practice medicine or surgery." Said section provides further: "A specific written charge, verified by affidavit, must be presented to the board, making definite and specific charges of such facts against the holder of such license. The board shall thereupon fix a time and place for the hearing of such charges, at which the person charged may appear and defend against the same. A copy of such charges, together with a notice of the time and place fixed for the hearing, shall be served upon the person so charged at least twenty days before the time set for the hearing of the same. If, after such hearing,

the board revokes such certificate and license, such order shall be by said board entered upon its record." In case the board revokes the license an appeal may be taken to the circuit or superior court of the county in which said license was issued. On appeal the verified charges are treated as the complaint and "the accused may plead to said charges and issues may be formed thereon as in any civil case."

The complaint averred that the individual appellants were members of and composed the State Board of Medical Registration and Examination; that in 1899 the appellee was duly licensed to practice medicine in Marion county, and has since that time been engaged in such practice, and that this right is of value to him and is a property right; that the board has "conspired with one Eva Boykin fraudulently to deprive" appellee of his license; that in pursuance of said conspiracy said board employed said Eva Boykin to visit him and to attempt to induce him to commit an abortion upon said Eva Boykin, and in furtherance of said conspiracy said board hired said Eva Boykin to file affidavits before it; that the appellee had been notified by the board of the filing of charges against him, charging him with gross immorality and for answering which he was required to appear before the board on August 16; that he was thus required to appear under and by virtue of authority, claimed to be conferred by an act regulating the practice of medicine as amended in 1901, which provided, that upon charges of gross immorality a license might be revoked by the board; that the charge against him as given—gross immorality—is a "fraudulent one," made by said Boykin at the instigation of said board, and in furtherance of the conspiracy she filed said affidavit before said board, and charged him with unfitness to practice medicine in that he, believing the affiant to be pregnant, had agreed to perform an abortion upon her; that said Eva Boykin, the secret employe and co-conspirator of said board, acting for and on its behalf and in furtherance of said conspiracy, filed the at-

tached fraudulent affidavit, charging this petitioner with gross immorality such as to unfit him for practice; "that it is the intention of said board to hear and determine said charges, and said board intends and will, as previously conspired, revoke the license of your petitioner unless restrained from so doing by this court;" that said board has "fraudulently conspired" with said Eva Boykin to deprive the appellee of his license," in that said Eva Boykin was employed and paid by said board to visit certain physicians, among them the plaintiff, and then to make affidavit against them; that said Eva Boykin is outside of the State of Indiana and a fugitive from justice; that said board will not produce her at the hearing of the charges against the appellee; that said board will not allow the appellee to produce witnesses in his defense; that the attorneys for said board have announced that said board intend to revoke the appellee's license, and that he will not be accorded the right to examine his accusers under oath; that the hearing of said charges will work great harm and injury to the appellee in his business and profession, and will injure his reputation, whether they are sustained or not, and whether said license is revoked or not." Wherefore he asks for a permanent injunction and temporary restraining order preventing said board from trying the appellee and from revoking his license.

The charges show that the appellee had offered to perform this abortion upon said Eva Boykin, believing her to be pregnant, for $10, $15 or $25, according to the character of the operation. This complaint was sworn to by the appellee, who states that the matters and facts therein contained are true "as he is informed and verily believes." An affidavit of a person not a party to this proceeding was filed in support of said application for injunction, which stated that an attorney for appellants had said to affiant "that said Eva Boykin and a man whose name he had

agreed not to disclose were gathering evidence against physicians, and that certain doctors, among them Doctor Rhodes (appellee), had been notified to appear before the board for trial, as they desired to make some examples in order to stop abortions; that Eva Boykin was a 'tool' or 'stool pigeon,' and had been employed by the board to gather evidence; said attorney further stated to said affiant that the board would not have said Eva Boykin at the trial of said Rhodes; that, in fact, the board would introduce no testimony in any of the cases then pending, other than the affidavits which were filed against the physician on trial." This affidavit and the verified complaint were all the evidence given by the appellee at the hearing of said application.

The affidavits of five members of the board were read in evidence. These affidavits were substantially the same, and each alleged that no steps of any kind had been taken or would be taken wrongfully to deprive appellee of his license; that Eva Boykin had not been hired to make said affidavits; that said board had no intention of revoking appellee's license unless the evidence, when heard, justified and required it; that it is not true that said board will not allow appellee to produce witnesses in his defense, but, on the contrary, it is and always has been the intention of said board in this case, and the uniform practice of said board in like cases, to permit oral evidence and the examination of witnesses if the party so desires; that the members of said board had no other intention or purpose than to hear the evidence, and then fairly and impartially determine his rights as the law and the preponderance of the evidence require.

Appellants also read in evidence the affidavit of their attorneys which states that said attorneys never said that the board intended to revoke appellee's license, nor did the board, so far as their information and knowledge go, have

any such intention, or any intention, except to hear the evidence and fairly determine whether or not the charges were sustained.

Appellants contend that appellee's affidavit, being only upon information and belief, cannot be accepted in a court when the matter is in controversy. It has been held 1. as a general rule that when a party seeks a temporary restraining order, which in this State is without notice, if the facts and circumstances are not within his personal knowledge he should state them upon his information and belief, and annex or file therewith the affidavit of some other person having personal knowledge of the facts alleged, that the same are true upon his personal knowledge of the facts. 2 Beach, Mod. Eq. Prac., §767, and cases cited; 1 High, Injunctions (4th ed.), §35; 2 High, Injunctions (4th ed.), §§1567, 1569, 1574, 1575, 1581; Gibson, Suits in Chancery, §818; *Campbell* v. *Morrison* (1838), 7 Paige 157; *Bank of Orleans* v. *Skinner* (1841), 9 Paige 305; *Youngblood* v. *Schamp* (1862), 15 N. J. Eq. 42; *Manistique Lumbering Co.* v. *Lovejoy* (1884), 55 Mich. 189, 20 N. W. 899; *Brooks* v. *O'Hara* (1881), 8 Fed. 529; *Ballard* v. *Eckman* (1884), 20 Fla. 661, 675, 676.

As to the correctness of the rule we need not decide, for the temporary injunction was granted upon notice to appellants, and in such a case the fact that many or all 2. of the material averments of the application are stated upon information and belief will not prevent the granting of the relief when the defendant in no manner denies such averments. *Gibson* v. *Gibson* (1879), 46 Wis. 462, 1 N. W. 154. The mere apprehensions or fears of a complainant, unsustained by fact, do not constitute 3. a sufficient ground for the interference of equity by injunction. Not the complainant, therefore, but the court, must determine that a wrong is about to be com-

mitted which will be irreparable before the relief will be granted. 1 High, Injunctions (4th ed.), §35; 2 High, Injunctions (4th ed.), §§1567, 1569, 1571, 1574, and cases cited; *Attorney-General* v. *Bank of Columbia* (1829), 1 Paige 511; *Campbell* v. *Morrison, supra; Youngblood* v. *Schamp, supra; Warfield* v. *Owens* (1846), 4 Gill (Md.) 364, 382; *Goodwin* v. *New York, etc., R. Co.* (1876), 43 Conn. 494.

In *Campbell* v. *Morrison, supra,* at page 160, it was said: "The complainant does not profess to know anything of the facts upon which his application for an injunction is founded. He therefore merely swears to his information and belief; which information may have been derived from those who were no better informed than himself on the subject. Such an allegation is undoubtedly sufficient in a bill to call for a discovery from the defendant of the fact thus stated; and it may in certain cases be sufficient to authorize the issuing of an injunction, where the defendant has had an opportunity to be heard in opposition to the application. * * * *Attorney-General* v. *Bank of Columbia* [1829], 1 Paige 511."

The chancellor said in *Attorney-General* v. *Bank of Columbia, supra,* at page 515: "Where a party cannot be presumed to have positive knowledge of a fact, it is the constant practice of this, and of all other courts, to permit him to swear to his information and belief; and give the adverse party, who alone can swear positively on the subject, an opportunity to deny it on oath. If he does not deny it, or furnish some explanation to induce the court to think otherwise, the belief of the other party is to be taken as the fact."

In 2 High, Injunctions (4th ed.), §1574, it is said: "And when the motion for a preliminary injunction is heard upon bill and answer, or upon bill, answer and affi-

davits, and the equities of the bill are fully met and negatived, the injunction will not be granted."

Applying the rules above stated governing the granting of temporary injunctions when notice of the motion therefor has been .given to. the defendant, it is evident that the evidence given in this cause was not sufficient to sustain the allegations of the complaint. It is not necessary, therefore, for us to decide, and we do not decide, whether, if said allegations had been established by sufficient and proper evidence, appellee would have been entitled to a temporary injunction.

It will be observed that the affidavit of appellee to the complaint, which was read in evidence, was on his "information and belief" only, and that no evidence was given of the truth of the facts alleged in the complaint by any person having personal knowledge thereof; that the affidavits of the five members of the board and their attorneys deny every possible wrong charged in the complaint. The allegation to the effect that Eva Boykin was employed to procure evidence in regard to the character of appellee is not denied, but this alone would not authorize the granting of a temporary injunction. The gist of the complaint is that appellants had prejudged appellee's case and had intended to revoke his license without any evidence and without giving him a hearing. Said affidavits of appellants and their attorneys deny the charge and say, in effect, that they intend to and will give him a fair and impartial hearing, and will determine said charges according to the evidence. This is all he is entitled to demand.

The fact that Eva Boykin is not in this State and cannot be compelled to attend the hearing of said charges, or that the board would try said charges without her presence or testimony, furnished no ground for enjoining the board from hearing and determining the truth of said charges.

The affidavit in regard to the statement made by the attorney for appellants adds nothing to the complaint, and does not tend to support it for the reason that said attorney was not a member of said board, and his statements were not proper evidence against appellants.

It is next insisted by appellee that said temporary injunction was properly granted for the reason that §7322 Burns 1901, Acts 1901, p. 475, §1, so far as it attempts to confer on said board the power to try appellee and determine whether he is guilty of the gross immorality charged, and to revoke or refuse to revoke his license therefor, is wholly unconstitutional and void, in that it attempts to confer upon said board judicial power; that it is in violation of the fifth amendment of the Constitution of the United States, which provides that "no person shall be held to answer for a capital or other infamous crime, unless on a presentment or indictment by a grand jury," and of the sixth amendment of the same Constitution which provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor" in this: that no provision is made in said section or act for compelling the attendance of appellee's witnesses by compulsory process; that §7322, *supra,* violates §2, article 3, of the Constitution of the United States, which provides that "the trial of all crimes, except in cases of impeachment, shall be by a jury."

As to appellee's contention in regard to §2, article 3, of the Constitution of the United States and the fifth and sixth amendments of the same Constitution, it is sufficient answer to say that the facts stated in the charges, the trial of which appellee seeks to enjoin in this case, do not constitute a public offense, nor is it claimed that they constitute such offense; but, even if they did, said provisions of the Constitution of the United States do

not affect or apply to prosecutions or proceedings in the courts of the states or to laws enacted by the legislatures of the states, but only to proceedings and prosecutions in the courts of the United States and laws enacted by congress. Cooley, Const. Lim. (7th ed.), 46, and cases cited in notes 4 and 5; *Twitchell* v. *Commonwealth* (1868), 7 Wall. 321, 19 L. Ed. 223; *Barron* v. *Mayor, etc.* (1833), 7 Pet. 243, 8 L. Ed. 672; *Herman* v. *State* (1856), 8 Ind. 545, 552; *Lake Erie, etc., R. Co.* v. *Heath* (1857), 9 Ind. 558, 559; *Baker* v. *Gordon* (1864), 23 Ind. 204, 209; *Butler* v. *State* (1884), 97 Ind. 378, 382; *Lloyd* v. *Dollison* (1903), 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062; *Capital City Dairy Co.* v. *Ohio* (1902), 183 U. S. 238, 22 Sup. Ct. 120, 46 L. Ed. 171; *Barton* v. *Kimmerley* (1905), 165 Ind. 609, and cases cited.

Statutes prescribing the qualifications of practitioners of medicine and surgery, and otherwise regulating the practice of those professions have been uniformly upheld by the courts as a valid exercise of the police power of the states, infringing no provisions of either federal or state Constitutions. *State, ex rel.,* v. *Green* (1887), 112 Ind. 462; *Eastman* v. *State* (1887), 109 Ind. 278, 58 Am. Rep. 400; *State, ex rel.,* v. *Webster* (1898), 150 Ind. 607, 41 L. R. A. 212, and cases cited; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *Meffert* v. *State Board, etc.* (1903), 66 Kan. 710, 714, 715, 72 Pac. 247; *People, ex rel.,* v. *Hawker* (1897), 152 N. Y. 234, 46 N. E. 607; *Reetz* v. *Michigan* (1903), 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; *Dent* v. *West Virginia* (1889), 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; *Hawker* v. *New York* (1898), 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002; 61 Cent. L. J. 424, 425; 22 Am. and Eng. Ency. Law (2d ed.), 780-782; 2 Current Law, 887, 888.

Statutes containing a provision like the one in question here, authorizing the board to revoke a license when the

holder has been guilty of a felony or of gross immorality, have been held not to violate any provision of the federal or state Constitutions, and it has been held that the granting or refusing to grant a license to practice medicine, or the revocation thereof by the board, is not the exercise of judicial power. 22 Am. and Eng. Ency. Law (2d ed.), 784, 785; 2 Current Law, 888; *State, ex rel.,* v. *Webster* (1898), 150 Ind. 607, and cases cited, 41 L. R. A. 212, and cases cited on page 214; *Town of Greenwood* v. *State, ex rel.* (1902), 159 Ind. 267, 269; *Wilkins* v. *State* (1888), 113 Ind. 514; *Ellis* v. *Steuben County* (1899), 153 Ind. 91; *Meffert* v. *State Board, etc., supra; Meffert* v. *Packer* (1904), 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350; *State, ex rel.,* v. *State Board, etc.* (1885), 34 Minn. 387, 26 N. W. 123; *State, ex rel.,* v. *State Board, etc.* (1885), 34 Minn. 391, 26 N. W. 125; *State* v. *State Board, etc.* (1885), 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575; *Traer* v. *State Board, etc.* (1898), 106 Iowa 559, 76 N. W. 833; *State Board, etc.,* v. *Roy* (1901), 22 R. I. 538, 48 Atl. 802; *People, ex rel.,* v. *Hawker, supra; Hawker* y. *New York, supra.*

It was said by this court in *State, ex rel.,* v. *Webster, supra,* at page 621: "While in some respects *quasi*-judicial, the action of the board is not judicial, any more than is the action of a county surveyor in fixing a boundary line, or of a county superintendent in giving or refusing a teacher's certificate, or the action of numberless other officers or boards in making investigations and decisions in matters committed to them. Neither is the circumstance that an appeal is allowed from a decision of the board an indication that its action is judicial. 'The right of appeal from the action of boards in their administrative character,' it was said by this court in *Board, etc.,* v. *Heaston* [1896], 144 Ind. 583, 55 Am. St. 192, 'is fre-

State, *ex rel.*, *v.* Ives—167 Ind. 13.

quently conferred by statute. The appeal in such cases is not permitted because the action of the board is considered judicial, but it is granted as a method of getting the matter involved before a court that it may be determined judicially.' "

It is clear that the judge erred in granting the temporary injunction. The order granting the same is therefore reversed.